UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW SHAWN BORKE,

      Plaintiff,                                  Case No. 20-cv-12774
                                               Hon. Matthew F. Leitman

v.

KELCY WARREN, *et al.*,

      Defendants.

_____/

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT
AND RECOMMENDATION (ECF No. 38); (2) ADOPTING
RECOMMENDED DISPOSITION OF REPORT AND
RECOMMENDATION (ECF No. 37); AND (3) GRANTING DEFENDANTS'
MOTIONS TO DISMISS (ECF Nos. 27, 28)**

Plaintiff Matthew Shawn Borke is an environmentalist and self-described "water protector." (Am. Compl. at ¶2, ECF No. 26, PageID.182.) Water protectors like Borke "are activists, organizers, and cultural workers focused on the defense of the world's water systems." (*Id.* at ¶25, PageID.186-187.)

For the past several years, Borke has opposed the construction of a natural gas pipeline that runs partially through the State of Michigan (known as the "Rover Pipeline"). (*See id.* at ¶4, PageID.182-183.) In this *pro se* action, Borke alleges that Defendant Energy Transfer LP, the company building the Rover Pipeline, Defendant Leighton Security Services, Inc., a company Energy Transfer hired to oversee security on Rover Pipeline construction sites, and certain executives and employees

1

of those companies (Defendants Kelcy Warren, Kevin Mayberry, and Gary Washburn) conspired to violate his civil rights in violation of 28 U.S.C. § 1985(3) and committed several state-law torts.  More specifically, Borke claims that Defendants harassed him, falsely reported him to law enforcement, and retaliated against him "because of his environmental activism and his status as a water protector." (*Id.* at ¶1, PageID.182.)

On April 14, 2021, Defendants moved to dismiss Borke's claims. (*See* Mots. to Dismiss, ECF Nos. 27, 28.)  The motions were referred to the assigned Magistrate Judge, and on December 27, 2021, the Magistrate Judge issued a report and recommendation in which he recommended that the Court (1) dismiss the claims against Defendants Warren and Mayberry without prejudice due to a lack of personal jurisdiction, (2) dismiss Borke's federal Section 1985 claim against the remaining Defendants with prejudice, and (3) decline to exercise supplemental jurisdiction over Borke's state-law claims and dismiss those claims without prejudice (the "R&R"). (*See* R&R, ECF No. 37.)  Borke has now filed timely objections to the R&R. (*See* Objections, ECF No. 38; Borke Reply Br., ECF No. 46.)  The Court has carefully reviewed the objections, and for the reasons explained below, the objections are **OVERRULED** and Defendants' motions to dismiss are **GRANTED**.

2

# I

## A

The R&R contains a detailed description of the parties and Borke's allegations against the Defendants. (*See* R&R, ECF No. 37, PageID.1349-1358.)  The Court incorporates that recitation of the background facts here and will discuss the facts pertinent to its analysis of Borke's objections below.

## B

As described above, the Magistrate Judge recommended in the R&R that the Court grant Defendants' motions to dismiss and dismiss Borke's claims.  The Magistrate Judge concluded, among other things, that:

- The Court lacked personal jurisdiction over Defendants Warren and Mayberry;

- Borke had failed to state a viable claim under Section 1985(3); and

- The Court should decline to exercise supplemental jurisdiction over Borke's remaining state-law claims.

(*Id.*, PageID.1364-1365, 1368-1369, 1374-1380.)

Borke has now objected to these conclusions. (*See* Objections, ECF No. 38; Borke Reply Br., ECF No. 46.)  The Court will examine each objection separately below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of a report and recommendation to which a party did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III

Borke first objects to the Magistrate Judge's conclusion that the Court lacks personal jurisdiction over Defendants Warren and Mayberry. (*See* Objections, ECF No. 38, PageID.1386-1389; Borke Reply Br., ECF No. 46, PageID.1436-1441.)  He insists that the Court has personal jurisdiction over both Defendants. (*See id.*)  The Court disagrees and therefore **OVERRULES** those objections.

### A

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176

(6th Cir. 1992)). "Michigan's long-arm statute allows a court to exercise 'general' personal jurisdiction, Mich. Comp. Laws § 600.701, as well as 'limited' personal jurisdiction, *id.* § 600.705." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Limited personal jurisdiction exists "for claims 'arising out of an act' which constitutes '[t]he transaction of any business within the state.'" *Id.* (quoting Mich. Comp. Laws § 600.705(1)). "Moreover, Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.'" *Id.* (quoting *Mich. Coalition,* 954 F.2d at 1176). The Sixth Circuit has described these "constitutional due process requirements" as follows:

> "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, –—— U.S. ——, 134 S.Ct. 1115, 1121 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, (1980)). For a nonresident defendant to be subject to personal jurisdiction, he must have "certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citations, quotation marks, and ellipsis omitted). As noted, [where a plaintiff] asserts that limited, or specific, jurisdiction is present [a court should] focus[] on "the relationship among the defendant, the forum, and the litigation," *id.* (citations and quotation marks omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, (1985), we employ a three-part test to determine whether the exercise of personal jurisdiction […] comports with constitutional due process:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods.*, 503 F.3d at 550 (emphasis added) (quoting *Mohasco*, 401 F.2d at 381).

*Id.* at 549-550.

Personal "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 699 (6th Cir. 2000). But where "an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id.*

**B**

The Court begins with Borke's claim against Defendant Warren. Warren is the founder, CEO, and Executive Chairman of Energy Transfer. (*See* Am. Compl. at ¶3, ECF No. 26, PageID.182.) The Court has reviewed the allegations against Warren in the Amended Complaint, and the Court agrees with the Magistrate Judge that Borke has not sufficiently established the Court's personal jurisdiction over

Warren.  Borke does not allege in the Amended Complaint that Warren was "actively and personally involved" in any activities in the State of Michigan such that it would be reasonable for Warren to be sued here.  Instead, Borke merely claims that Warren is the CEO and Executive Chairman of Energy Transfer and that in those roles he is "responsible for the 'day-to-day management of' Energy Transfer." (*Id.*)  Such a general allegation of Warren's control over Energy Transfer is insufficient to establish that the Court may exercise personal jurisdiction over Warren here.

Borke counters that Energy Transfer has held Warren out as "identif[ying] and develop[ing] strategic business opportunities." (Objections, ECF No. 38, PageID.1387.)  And he insists that it is "reasonable to infer that a CEO who claims he is responsible for the 'day to day' affairs of his company had a role in decide to route his company's newest 'major interstate pipeline' though Michigan." (*Id.*)  But Borke's generalized allegations in his Amended Complaint about Warren's position at Energy Transfer cannot support such a conclusion.  The Amended Complaint is devoid of any allegations about how involved Warren actually was with the construction of the Rover Pipeline and/or whether Warren made any decisions related to the pipeline's route through the State of Michigan.

Borke further asserts that Warren's involvement in the Rover Pipeline project "is more than merely plausible" because Warren "personally wrote [a letter] to members of Congress to try to discourage them from raising their concerns" about

the pipeline to federal regulators. (*Id.*) But whether the Court has personal jurisdiction over Warren does not depend on whether he had any involvement with the Rover Pipeline project writ large. Instead, the question is whether Warren was involved with any actions that were taken *in and/or directed toward the State of Michigan*. And Borke has not sufficiently pleaded or produced sufficient evidence that Warren was involved in such conduct. Moreover, the letter Borke identifies was sent to elected officials (who were not from Michigan) in Washington D.C., not to recipients in Michigan. Warren's letter to Congress therefore does not support the conclusion that it would be reasonable to require Warren to defend himself in a Michigan federal court.

Finally, Borke says that Warren had "take[n] a personal interest in activists who oppose his pipeline[s]," and he points to an allegation in the Amended Complaint where he quotes Warren as saying that people who oppose the pipelines "need[] to be removed from the gene pool." (Borke Reply Br., ECF No. 46, PageID.1440, quoting Am. Compl. at ¶27, ECF No. 26, PageID.187.) But even if Warren had a personal animus against "water protectors" generally, the Amended Complaint does not include any allegations that Warren personally directed any actions be taken against Borke or other individuals protesting the Rover Pipeline *in Michigan*.

For all of these reasons, Borke's objection to the Magistrate Judge's conclusion that the Court lacks personal jurisdiction over Warren is **OVERRULED**. The Court **DISMISSES** Borke's claims against Warren **WITHOUT PREJUDICE**.

C

The Court next turns to Borke's claim against Defendant Mayberry. Mayberry is the CEO of Leighton Security, "a contractor providing security for [Energy Transfer's] projects," including the Rover Pipeline. (Am. Compl. at ¶¶ 5, 7, ECF No. 26, PageID.183.)  Borke's sole specific allegation against Mayberry in the Amended Complaint is that in 2012, Mayberry signed a "a Certificate of Authority to Transact Business or Conduct Affairs in Michigan" that was filed with Michigan's Department of Licensing and Regulatory Affairs for a company called Tutela Services. (*Id.* at ¶16, PageID.185.)  Borke says that in 2013, Tutela Services changed its name to Leighton Security. (*See id.* at ¶17, PageID.185.)  Borke does not allege that Mayberry was personally involved in any specific business conducted in the State of Michigan.  Nor does Borke allege that Mayberry took any action, or directed any action be taken, against Borke or other individuals in the State of Michigan.  As the Magistrate Judge properly concluded, "the mere fact that Mayberry serves as a corporate officer of Leighton Security" – and in that role may have signed some documents that were filed with a regulatory authority in Michigan – "is an

9

insufficient basis for this Court to assert jurisdiction over him." (R&R, ECF No. 37, PageID.1369-1370, citing *Balance Dynamics*, 204 F.3d at 699.)

In the objections, Borke does not take issue with the Magistrate Judge's conclusion that the allegations in the Amended Complaint are not sufficient for the Court to assert personal jurisdiction over Mayberry. The Court therefore considers any such objections waived. *See*, *e.g.*, *Thomas*, 474 U.S. at 149.

Instead of attempting to show that his allegations support the assertion of personal jurisdiction over Mayberry, Borke asserts that after his lawsuit was filed, Mayberry "fil[ed] a false sworn statement with the court," and he says that "[a]n appropriate consequence for Mayberry lying to the court under oath in an effort to escape personal jurisdiction[] would be for the court to find it has personal jurisdiction over him because he either forfeited the argument or consented to jurisdiction by lying."[1] (Objections, ECF No. 38, PageID.1389.) Borke also asks the Court to sanction Mayberry. (*See* Borke Reply Br., ECF No. 46, PageID.1436-1439.)

---

[1] The "false statement" to which Borke refers is an affidavit that Mayberry filed in support of the motion to dismiss that he, Leighton Security, and Washburn filed. (*See* Mayberry Aff., ECF No. 27-3.) In that affidavit, Mayberry swore under oath, among other things, that (1) "Leighton Security […] does not provide any security services for Michigan residents or businesses" and (2) "A review of Leighton Security['s …] records indicates that Leighton Security […] did not supply any of its employees or security guards for the Rover pipeline project that is referenced in [Borke's] amended complaint, and no employees of Leighton Security […] were physically present at any of the Michigan areas referenced in [Borke's] complaint." (*Id.* at ¶¶ 7-8, PageID.310-311.) Borke insists that those statements are false. He maintains that Leighton Security provided security services for Rover Pipeline

But Borke has not cited any case in which a court has held that a person who submits a false affidavit in opposition to a motion to dismiss becomes subject to personal jurisdiction on the plaintiff's underlying claims.  Instead, Borke refers the Court to the Supreme Court's decision in *Ins. Corp. of Ireland, LTD v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). (*See* Borke Reply Br., ECF No. 46, PageID.1438, citing *Ireland*.)  In *Ireland*, as relevant here, the Supreme Court held that a district court did not abuse its discretion under Federal Rule of Civil Procedure 37(b)(2)(A) when the court, as a sanction for a party's violation of a discovery order, held that certain jurisdictional facts were established. *Ireland*, 456 U.S. at 695-96, 706-07.

Assuming *arguendo* that this Court, like the district court in *Ireland*, has the discretion to subject Mayberry to personal jurisdiction based on his allegedly false and/or misleading affidavit, it would not exercise that discretion here.  The allegedly-false statements in the affidavit relate to Leighton Security's contacts (or lack thereof) with Michigan, not to Mayberry's personal contacts (or lack thereof) with Michigan. (*See* fn. 1, *supra*).  Thus, if the allegedly-false statements could support an assertion of personal jurisdiction by this Court, it would most properly be the assertion of personal jurisdiction over Leighton Security – the entity that stood to

---

construction sites in Michigan and he says that Leighton Security employees were present in the State of Michigan. (*See* Borke Reply Br., ECF No. 46, PageID.1436-1439.)

benefit from the allegedly-false statements – not over Mayberry personally.  But the Court need not decide whether the allegedly-false statements in the affidavit provide a basis on which to assert person jurisdiction over Leighton Security.  The Magistrate Judge concluded that Leighton Security *is* subject to the Court's personal jurisdiction, and Leighton Security has not objected to that recommendation. (*See* R&R, ECF No. 37, PageID.1370-1374.)  The allegedly-false statements in the affidavit are thus immaterial to the personal jurisdiction issues before the Court.

For all of these reasons, the Court declines to exercise personal jurisdiction over Mayberry based on his allegedly false affidavit.  The Court therefore **OVERRULES** Borke's objections to the R&R with respect to Mayberry and **DISMISSES** Borke's claims against Mayberry **WITHOUT PREJUDICE**.

### IV

Next, Borke objects to the Magistrate Judge's recommendation that the Court dismiss his federal Section 1985(3) claim. (*See* Objections, ECF No. 38, PageID.1389-1397.)  This objection is **OVERRULED**.

### A

Section 1985(3) is a federal statute that "addresses conspiracies committed by private actors." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 993 (6th Cir. 1994).  It prohibits a private conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws." 28 U.S.C. § 1985(3). "To state a claim under § 1985(3), a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of C & J v. Scott,* 463 U.S. 825, 828-29 (1983)).

## B

In the R&R, the Magistrate Judge concluded that Borke failed to state a viable claim under Section 1985(3) because, among other things, Borke did "not allege the type of 'class-based, invidious discriminatory animus' required" to state a viable Section 1985(3) claim. (R&R, ECF No. 37, PageID.1375.)  More specifically, the Magistrate Judge explained that "even where Borke does make allegations about the Defendants taking concerted action against a 'class' of persons, that class, which he describes as 'water protectors,' is not one entitled to protection under § 1985(3)." (*Id.*, PageID.1376.)  The Magistrate Judge therefore recommended that the Court dismiss Borke's Section 1985(3) claim "with prejudice." (*Id.*, PageID.1379.)

**C**

Borke raises two primary objections to the Magistrate Judge's conclusion that his Section 1985(3) claim is not viable.  Neither ground persuades the Court that Borke may maintain a Section 1985(3) claim against any of the Defendants here.

Borke first argues that he "qualifie[s] for protection under § 1985(3) because he is a person" and Section 1985(3) expressly allows "a person" to bring a federal conspiracy action. (Borke Reply Br., ECF No. 46, PageID.1441-1443, quoting 28 U.S.C. § 1985(3).)  But while "a person" may bring an action under Section 1985(3), "[t]he acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination." *Vakilian*, 335 F.3d at 518.  *See also United Bhd. of C & J*, 463 U.S. at 829 (explaining that Section 1985(3) "require[s] that 'there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Thus, Borke's status as a "person," standing alone, does not entitle him to bring a Section 1985(3) claim.

Borke next argues that he may bring a claim under Section 1985(3) because he belongs to a class of "eco people," and Defendants' animus toward him was based upon that class membership. (Borke Reply Br., ECF No. 46, PageID.1443-1452.) Borke insists that because the Defendants "were motivated to target [him] because of their malice and hostility toward his 'kind'" (*i.e.*, "eco people" and/or "water

14

protectors"), their "'maliciously motivated' discrimination is sufficient to constitute class-based animus for § 1983(3) purposes." (*Id.*, PageID.1447.)   The Court disagrees.

Contrary to Borke's argument, not all classes of people qualify for protection under Section 1985(3).  As the Sixth Circuit explained in *Haverstick*, *supra*, "[a] class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick*, 32 F.3d at 994 (affirming dismissal of Section 1985(3) claim where "plaintiffs ha[d] failed to allege in their complaint any race-based, ethnic-animated, or gender-motivated animus by the defendants"). *See also Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991) (explaining that "§ 1985(3) covers classes characterized by 'some inherited or immutable characteristic'") (quoting *McLean v. International Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987)); *Royal Oak Entertainment, LLC v. City of Royal Oak, Michigan*, 205 F. App'x 389, 399 (6th Cir. 2006) (noting that "[w]e have held that § 1985(3) applies only where the discrimination was based on race or membership in another class comprising discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics") (internal quotation

and citation omitted).[2]  And here, while Borke claims that he is a "water protector," that class is neither characterized by "some inherited or immutable characteristic" nor is it a "discrete and insular minorit[y] that receive[s] special protection under the Equal Protection Clause because of inherent personal characteristics."

Indeed, the Sixth Circuit has held that members of a class of environmentalists, much like the "water protectors" Borke describes here, may not bring a claim under Section 1985(3).  In *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493 (6th Cir. 2004), the plaintiffs were "self-described environmentalists who opposed a mining company's application for a zoning change in Kentucky state court." *Warner*, 104 F. App'x at 494.  "When the lawyers representing both the mining company and the landowners who wanted to sell their land to the mining company began what the plaintiffs saw as vexatious retaliation against them in the zoning litigation, the plaintiffs filed separate but similar actions in federal court, pursuant to [Section 1985(3)]." *Id.*  The district court dismissed the complaint on the basis that, among other things, "the class described in the

---

[2] *See also McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 436 (6th Cir. 2006) (affirming dismissal of Section 1985(3) claim, explaining that "[t]he Sixth Circuit has ruled that § 1985(3) covers cases involving invidious discrimination on a class basis as long as the class meets certain stringent requirements," and holding that while a "group of individuals seeking a degree as a certified occupational therapy assistant may be a relatively discrete minority, [] certainly it is neither based on inherent personal characteristics nor traditionally the subject of special protection under the Equal Protection Clause.").

complaints was not 'cognizable' under § 1985(3)." *Id.* at 494-95.  The Sixth Circuit agreed.  On appeal, it held that plaintiffs' "membership in an environmental group that opposed mining" did not qualify the plaintiffs for protection under Section 1985(3). *Id.* at 497.  *Warner* therefore confirms that Borke may not pursue a federal conspiracy claim under Section 1985(3) based on his status as a member of a class "water protectors" and/or "eco people."

Borke counters that his Section 1985(3) claim is viable under the Sixth Circuit's decisions in *Cameron v. Brock*, 473 F.2d 608 (6th Cir 1973) and *Glasson v. City of Louisville*, 518 F.2d 899 (6th. Cir. 1975).  (*See* Borke Reply Br., ECF No. 46, PageID.1448.)  In those cases, the Sixth Circuit allowed classes comprised of political supporters to bring claims under Section 1985(3).  Borke insists that "[i]f animus against supporters of a political candidate [under *Cameron* and *Glasson*] constitutes a § 1985 class, then so too does animus against 'eco-people.'" (*Id.*)

Borke's reliance on *Cameron* and *Glasson* is understandable, and those cases do cloud the Court's analysis to some degree. But the holdings in *Cameron* and *Glasson* cannot reasonably be reconciled with more-recent Supreme Court precedent.  For example, in 1993, the Supreme Court explained in *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263 (1993) that:

> Whatever may be the precise meaning of a "class" for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, *the term unquestionably connotes something more than a group of individuals who share a desire to*

> *engage in conduct that the § 1985(3) defendant disfavors*.
> Otherwise, innumerable tort plaintiffs would be able to
> assert causes of action under § 1985(3) by simply defining
> the aggrieved class as those seeking to engage in the
> activity the defendant has interfered with. This definitional
> ploy would convert the statute into the "general federal tort
> law" it was the very purpose of the animus requirement to
> avoid. *Ibid*. As Justice BLACKMUN has cogently put it,
> the class "cannot be defined simply as the group of victims
> of the tortious action."

*Bray*, 506 U.S. at 269 (emphasis added). As another Judge of this Court has

recognized, "subsequent to *Bray*," the Sixth Circuit has held that a plaintiff must

"fall within" a "discrete and insular minorit[y]" group in order to seek the protections

of Section 1985(3). *Lee v. Miller*, 2017 WL 6621544, at ** 5-7 (E.D. Mich. Dec. 28,

2017) (rejecting plaintiff's reliance on *Cameron* in light of *Bray* and Sixth Circuit

decisions following *Bray*).  For example, in *Haverstick*, *supra*, the Sixth Circuit cited

*Bray* and then held that "[a] class protected by section 1985(3) must possess the

characteristics of a discrete and insular minority, such as race, national origin, or

gender." *Haverstick*, 32 F.3d at 993-94. *See also Vakilian*, 335 F.3d at 519 (same,

citing *Haverstick*); *Ballinger v. Pendleton*, 121 F.3d 707 (TABLE), at *1 (6th Cir.

Aug. 4, 1997) (rejecting Section 1985(3) claim and holding that plaintiff "was

required to show that he experienced discrimination as a result of his membership in

a discrete and insular minority that receives special protection as a suspect class

under the Fourteenth Amendment because of inherent personal characteristics");

18

*Royal Oak Entertainment*, 205 F. App'x at 399 (same).[3]  These more-recent Sixth Circuit rulings are more in line with current Supreme Court authority interpreting the scope of Section 1985(3). *See Perez-Sanchez v. Public Building Authority*, 531 F.3d 104, 108-10 (1st Cir. 2008) (O'Connor, J.) (explaining that "[i]ntervening Supreme Court precedent [] calls the result in *Cameron* into considerable doubt" and noting that in light of that Supreme Court precedent, every circuit court of appeals to consider the matter has held, contrary to *Cameron*, that Section 1985(3) does not apply to conspiracies directed at holders of political beliefs).  The Court therefore chooses to follow this more-recent body of case-law that is consistent with the Supreme Court's rulings on Section 1985(3).

Borke responds *Cameron* and *Glasson* control here over the more-recent line of cases that limit Section 1985(3) claims to members of classes defined by immutable characteristics.  His argument proceeds in several steps. (*See* Borke Reply Br., ECF No. 46, PageID.1449-1450.)  First, Borke says that Section 1985(3) creates two different conspiracy claims: a claim for conspiracy to deprive a person of equal protection of the laws and an additional claim for conspiracy to deprive a person of equal privileges and immunities under the laws. (*See id.*, PageID.1449.)

---

[3] *See also Haider v. Michigan Technological University*, 89 F.3d 833 (TABLE), at *2 (6th Cir. June 19, 1996) (holding that plaintiff had failed to "allege, let alone prove" that alleged conspiracy targeted a protected class that "possess[ed] the characteristics of a discrete and insular minority, such as race, national origin, or gender").

Second, he says that the more recent Sixth Circuit decisions limiting Section 1985(3) claims to conspiracies directed at classes possessing the characteristics of "insular minorities" (a) apply only to Section 1985(3) claims based upon conspiracies to deprive persons of equal protection of the laws and (b) do not apply to Section 1985(3) claims based upon conspiracies to deprive persons of equal privileges and immunities. (*See id.*)   Third, he contends that *Cameron* and *Glasson* are still good law notwithstanding the more recent cases discussed above because *Cameron* and *Glasson* involved Section 1985(3) claims based upon conspiracies to deprive persons of equal privileges and immunities. (*See id.*)   Finally, he contends that *Cameron* and *Glasson* control here because his Section 1985(3) claim is based upon a conspiracy to deprive him of equal privileges and immunities.  (*See id.*)

There are several problems with this argument.  To begin, the more recent Sixth Circuit cases – holding that Section 1985(3) applies only to conspiracies against classes that have the characteristics of a discrete and insular minority – did not distinguish between a conspiracy to deprive a person of equal protection and a conspiracy to deprive a person of equal privileges and immunities.  In *Haverstick*, for example, the Sixth Circuit explained that the second element of a Section 1985(3) claim is that the defendant conspired "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and the Sixth Circuit then held that

in order to "compl[y]" with that element, a plaintiff must "prove" that the defendant conspired against a member of a class that "possess[es] the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick*, 32 F.3d at 993-94 (quoting in part *Griffin*, 403 U.S. at 102-03).

Next, *Cameron* and *Glasson* did not focus on Section 1985(3) conspiracies to deprive a person of equal privileges and immunities. Indeed, the Sixth Circuit in *Cameron* repeatedly treated the plaintiff's claim as one for conspiracy to deprive a person "of equal protection" of the law. *Cameron*, 473 F.2d at 610. And the court in *Glasson* did not distinguish between the two types of conspiracies mentioned in Section 1985(3). *See Glasson*, 518 F.2d at 903-04 (first describing plaintiff's claims as alleging that the defendants "conspired to deprive her of the equal protection of the laws and of equal privileges and immunities under the laws of the United States" and then making no distinction between the equal protection and equal privileges and immunities theories in its analysis). Thus, even if the Sixth Circuit's post-*Bray* cases like *Haverstick* were limited to conspiracies to deprive a person of equal protection, *Cameron* and *Glasson* could not be reconciled with those cases on the basis that, unlike those cases, *Cameron* and *Glasson* focused on conspiracies to deprive a person of equal privileges and immunities.

Finally, neither *Cameron* nor *Glasson* (nor any other case cited by Borke) expressly adopts his theory that the second element of a Section 1985(3) claim –

which requires "class-based" animus, *see Havertsick*, 32 F.3d at 994 – differs depending upon whether a plaintiff alleges a conspiracy to deprive a person of equal protection or a conspiracy to deprive a person of equal privileges and immunities. Indeed, Borke has not cited any authority holding that a Section 1985(3) claim for conspiracy to deprive a person of equal protection lies only where the plaintiff is a member of a discrete and insular minority, whereas a Section 1985(3) claim for conspiracy to deprive a person of equal privileges and immunities lies even where the plaintiff is not a member of such a class.

For all of these reasons, the Court holds, consistent with the Sixth Circuit's post-*Bray* decisions such as *Haverstick*, that a Section 1985(3) conspiracy claims is viable only where the plaintiff alleges, among other things, that the defendant conspired against him because he belongs to a class that "possess[es] the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick*, 32 F.3d at 994. Since Borke does not make such an allegation, his claim under Section 1985(3) fails as a matter of law. The Court therefore **OVERRULES** Borke's objection to the Magistrate Judge's recommendation that the Court dismiss his Section 1985(3) claim with prejudice.

## V

Finally, Borke objects to the Magistrate Judge's recommendation that the Court (1) decline to exercise supplemental jurisdiction over Borke's state-law claims

22

and (2) dismiss those claims without prejudice. (*See* Objections, ECF No. 38, PageID.1397.)  Borke says that he would be prejudiced by such a dismissal because it would be "impossible to refile those claims in state court" based on the running of the statute of limitations while this case has been pending. (*Id.*)  The Court disagrees.

Under 28 U.S.C. § 1367(d), where, as here, state-law claims fall within a district's court's supplemental jurisdiction, "[t]he period of limitations for any [such] claim […] shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  Thus, a dismissal without prejudice will not harm Borke because the applicable state limitations periods have been tolled while his state-law claims have been pending here and will be tolled for thirty days following dismissal of the state-law claims.  Thus, assuming *arguendo* that Borke's state-law claims were timely filed in this Court, he will not suffer any unfair prejudice from the dismissal without prejudice of those claims.[4]   Borke's objection to the Magistrate Judge's recommendation to dismiss his state-law claims without prejudice is therefore **OVERRULED**.

---

[4] The Court makes no finding as to the viability of Borke's state-law claims or as to whether those claims were timely when they were filed in this Court.

# VI

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

- Borke's objections to the R&R (ECF No. 38) are **OVERRULED**;

- The recommended disposition of the R&R (ECF No. 37) is **ADOPTED**;

- Defendants' motions to dismiss (ECF Nos. 27, 28) are **GRANTED**;

- Borke's claims against Warren and Mayberry are **DISMISSED WITHOUT PREJUDICE**;

- Borke's federal Section 1985(3) claim is **DISMISSED WITH PREJUDICE**; and

- Borke's state-law claims are **DISMISSED WITHOUT PREJUDICE**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 22, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 22, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
